## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION - DETROIT

IN RE:

    MCKUHEN, CATHY,

        Debtor.

_____/

Case No. 08-54027

Chapter 13

Hon. Walter Shapero

## OPINION REGARDING DEBTOR'S COUNSEL'S
## APPLICATION FOR COMPENSATION

### I.

The matter before the Court is the Trustee's objection to Counsel's Application for Compensation. The Trustee states the following objections to the applicant's fee application: (1) the fees and expenses incurred prior to the bankruptcy case filing in defending a state court claim against Debtor should not be allowed because the services did not benefit the estate and were not necessary to the administration of the bankruptcy case; (2) applicant failed to exercise "billing judgment" relating to services in reviewing proofs of claim, and, the amount requested for such is unreasonable, and (3) the amount requested for preparation of the fee application is unreasonable.

### II.

Cathy McKuhen filed her Chapter 13 petition on June 10, 2008. Debtor's plan was confirmed on September 16, 2008. Subsequently, on September 26, 2008, Debtor's counsel filed his Application for Fees and Services (fee application), requesting fees of $6,552.67 and

expenses of $1,610.74, totaling $8,163.41. The Trustee filed her objections and the Court set the matter for hearing.

The facts relevant to the Trustee's objections begin prior to June 10, 2008, the petition date. On September 14, 2007, Debtor first consulted with counsel with a view to filing a Chapter 13 Bankruptcy petition and formally retained counsel's office for that purpose on September 21, 2007. Debtor had learned she was being sued in state court by LTD Carmel, Inc., assignee of Bally's Total Fitness, for a debt of $2,610.97. Debtor claimed she was not obligated to pay the debt, and on October 8, 2007 met with counsel regarding her options in that state court suit. On October 11, 2007, a state court default judgment was entered against her for $2,800.03. During this time period, Debtor was also investigating the possibility of commencing a lawsuit to collect damages on a personal injury claim against Waffle House restaurants in Kissimmee, Florida. Debtor decided to delay the filing of her bankruptcy petition to allow time for her to pursue the possibilities of that personal injury claim, and also decided to defend the state court lawsuit while doing so. The rationale for the filing delay was that the potential recovery from the personal injury claim and consequent ability to pay creditors might obviate the need to file for bankruptcy.

In the state court litigation (Case. No. 07-46805-GCT, 20th District, State of Michigan), Debtor filed and subsequently pursued a Motion to Set Aside the Default Judgment, and engaged in extended discovery, and other pre-trial activities. After unsuccessfully attempting to obtain a favorable response from a personal injury attorney in Florida, Debtor finally concluded that she probably did not have a viable personal injury claim, or would not pursue it. On the eve of the state court trial, Debtor filed her Chapter 13 petition. LTD Carmel, Inc. has not filed a proof of claim in this case.

Debtor's counsel's fee application of $6,552.67 in fees and $1,610.74 in expenses (a total of $8,163.4) includes $2,455.00 of fees and $1,427.74 of expenses for work done and expenses incurred in defending the state court claim. $4,097.67 of the fees and $183.00 of the expenses requested represent work done and expenses incurred in relation to the bankruptcy case itself.

## III.

11 U.S.C. § 330(a) states in pertinent part:

(1)     After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103 -

   (A)  <u>reasonable compensation for actual, necessary services</u> rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

   (B) <u>reimbursement for actual, necessary expenses</u>.

(2)     The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

                              ***

(4)(A)   Except as provided in subparagraph (B), the court shall not allow compensation for –

                              ***

   (ii)     services that were not -

      (I)      reasonably likely to benefit the debtor's estate; or

      (II)     necessary to the administration of the case.

(4)(B)    In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.


## A.

<u>Fees and Expenses Associated with the State Court Litigation</u>

The Court plays a significant role in protecting the assets of the bankruptcy estate and to that end, bears responsibility for ensuring that estate assets are not wasted and that all fees paid from the estate are fully warranted.  *In re Allied Computer Repair*, 202 B.R. 877, 881 (Bankr. W.D. Ky. 1996) (citations omitted).

As a threshold matter, before the reasonableness of any requested compensation is examined, the underlying services must be found to be "necessary," i.e., a benefit to the bankruptcy estate.  *Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enters.)*, 997 F.2d 1321, 1323 (10th Cir. 1993) ("[T]he beneficial nature of legal services must be determined before a reasonableness inquiry may even be conducted…").  It is the burden of the attorney requesting compensation to demonstrate that his or her services were beneficial to the estate.  *In re Allied Computer Repair*, 202 B.R. at 886 ("[T]he basic test of recovery requires the applicant to demonstrate that his or her services made a beneficial contribution to the estate or to the creditors.").  "Bankruptcy attorneys are not entitled to compensation merely because time recorded was actually expended.  Billable hours do not necessarily translate into compensable hours."  *In re New Boston Coke Corp.*, 299 B.R. 432, 447 (Bankr. E.D. Mich. 2003).

4

As noted, Trustee objects to the fees and expenses associated with the state court litigation totaling $3,882.74 on the grounds that the work done was not "likely to benefit the debtor's estate" and was not "necessary to the administration of the case," asserting that the litigation work was done substantially prior to the filing of the petition and thus not within the purview of the statutory language. In doing so, the Trustee emphasizes the above quoted provisions of § 330(a)(4)(A)(ii), and in particular the references therein to a benefit to the "debtor's estate" and "the administration of the case." Applicant, on the other hand, points to the language in sub-paragraph (4)(B) which affirmatively permits compensation in consideration of the "benefit and necessity of such services to the debtor" (Emphasis added). The statute is certainly not a model of clarity, particularly since this very same latter section also contains the preceding phrase "in connection with the bankruptcy case."

The various references to the administration of the "case" and the "debtor's estate" create an argument derived from a very literal interpretation of those words or phrases that such preclude awarding of compensation for almost any services rendered prior to the actual filing of the case; or, which are other than those directly having to do with the actual preparation and filing of the case and immediately (and not remotely in time) preceding its filing. Indeed, a bankruptcy judge in the case of *In re Busetta-Silva*, 300 B.R. 543 (Bankr. D. N.M. 2003) gave those terms such a narrow and literal meaning, (one which is essentially what the Trustee argues for in this case), only to be reversed on appeal at 314 B.R. 218 (BAP 2004). The appellate body gave those terms a broader definition, emphasizing that while the pre-petition services involved there may not have, or less so, benefitted the debtor's estate or the administration of the case as such, they did

5

benefit the debtor and most importantly had a material nexus with the case itself and the administration of the estate. In doing so, the court put more emphasis on the language in sub-paragraph (4)(B) referring to "debtor" and noting that it was a subsequent addition to the statute and otherwise made more sense.

In this case, some nine months elapsed between the date Debtor first consulted with bankruptcy counsel and the actual filing of the bankruptcy case. As this Court concludes from the facts before it, the delay was due to (1) dealing with a newly pending state court proceeding seeking to obtain a judgment against debtor with respect to an asserted liability which, if unpaid, would be or become a claim on the debtor's bankruptcy estate; and (2) investigating the possibility of a personal injury tort cause of action accruing in favor of debtor, the outcome of which, if materially favorable to the debtor, might produce funds sufficient to pay creditors (including the creditor in the pending state court action) and thus possibly obviating the need for even filing the bankruptcy case. As initially filed, Schedule F showed unsecured creditors in the amount of $30,913.35 - an amount not so large as to be considered so far beyond the scope of a favorable result by settlement or trial of a meritorious personal injury cause of action as to be unrealistic, and therefore a fair rationale for delaying an otherwise appropriate filing.  A judgment in the state court cause of action and any resulting immediate efforts to collect on it held out the prospect of pushing debtor into filing the bankruptcy case, prior to the time that the possibilities of the tort cause of action could be appropriately evaluated, and/or pursued to the point of determining its possible effect on the debtor's financial situation. This is particularly so where as here, the evaluation and potential representation were in the hands of separate counsel in Florida. It seems to this Court, at

least within the totality of the factual framework of this particular case, services rendered by bankruptcy counsel which had the purpose and effect of delaying (or incident thereto determining the actual liability on or amount of a potential claim in the future bankruptcy estate) and/or potentially but realistically obviating the need for the actual filing, were certainly "services to the debtor" within the meaning of the statute. And if, as this Court does, one takes a broader view than the Trustee of the meaning of the "case" or its administration, such can also provide the nexus to, and fit within the purview of those terms thus construed, keeping also in mind we are here talking about a chapter 13 case in which the income (including future income) and resources of a debtor, as well as the sum total of the claims involved, play a crucial role in the length and breadth of a confirmable plan. To conclude otherwise also has potentially adverse policy ramifications of discouraging reasonable and responsible efforts on the part of debtors and their counsel to avoid bankruptcy in the first place.

    That said, the amount of compensation sought has to be reasonable. On its face, spending $3,882.74 in fees and expenses to defend against a claim for $2,610.97 would appear to be unjustified. It appears the state court case against Debtor was commenced on August 15, 2007, she was personally served on August 27, and had 21 days from that date to file an answer or otherwise plead. She first consulted with bankruptcy counsel on September 14, 2007and a default judgment against her was entered on October 11, 2007. Debtor's counsel filed a motion to set aside the default, which was initially noticed for hearing on November 20, 2007 and eventually granted on December 14, 2007. The following proceedings consisted of various discovery matters and disputes with a trial eventually scheduled for June 11, 2008. The bankruptcy was filed on June 10, 2008. On

7

her schedules, debtor listed the plaintiff in the state court action on Schedule F as the holder of a disputed claim for $2,610.97 and noted the pendency of the state court proceeding in her Statement of Financial Affairs in her answer to question 4. In the compensation application, there are specific entries for September 27, 2007 and for October 8, 2007 reciting discussions with Debtor regarding the status of the state court action and her bankruptcy options. Part of the September 27, 2007 entry states that a default judgment had been entered against the Debtor. The provided Court docket indicates such was in fact entered later, i.e. on October 11, 2007.

The Court's analysis of the situation requires the conclusions that (1) the entry of the state court default judgment (and thus the costs of setting it aside) could likely have been prevented by more timely action by debtor's counsel; (2) the parties waited much too long before coming to the conclusion that the Florida lawsuit was not going to be pursued, and during that overly extended period, a substantial part of the state court lawsuit defense costs were incurred; (3) if the bankruptcy was filed much earlier than it was and the claim had been brought within the bankruptcy court framework, given the amount of the claim, and the amounts already likely expended by the plaintiff in that case in the state court pursuance of the claim, if a claim were even filed and if the debtor objected to it, the costs of pursuing that objection, if it even got to that point (and that is debatable given the indicated facts), and the likely dividend to be paid to creditors in a chapter 13 case, would have been materially less than what was charged by applicant for its state court efforts; (4) counsel should have affirmatively advised debtor as to such, much earlier in the game as the defense costs mounted, instead of waiting as long as it did to hear from Debtor about the Florida case; and (5) if the Debtor, as appears to have

been the case, would have used the proceeds of the Florida cause of action to in part at least pay her creditors in the absence of a bankruptcy, the same, and possibly even a better result, could have likely been achieved via a more timely filing of the chapter 13 bankruptcy and without having incurred or expended the state court litigation defense costs. It should further be noted that the foregoing is not a matter or product of hindsight. Rather it is essentially one of foresight - something that could reasonably have been predicted before many of the services rendered in the state court proceeding were rendered. Taking all of such into account, the Court therefore concludes that the amounts awarded relative to attorney fees and expenses related to the state court action should total $625 and $604.84 respectively, instead of the amounts requested.

## B.

### Fees for Reviewing Proofs of Claim

Trustee's objects to as unreasonable the fees for reviewing proof of claim arguing that applicant failed to exercise "billing judgment." Applicant spent 3.4 hours reviewing 13 proofs of claim[1] filed in this case, amounting to fees of $844.50. Attorneys must use

---

[1] Applicant listed the following entries under the "Claims Administration" section of the fee application.

| Date | Service | Amount | Hours | Fee |
|------|---------|--------|-------|-----|
| 7/7/08 | Claim #4 | **$407.07** | 0.2 | $48.00 |
| 9/4/08 | Claim #19 | **$414.31** | 0.2 | $51.00 |
| 6/20/08 | Claim #1 | **$666.96** | 0.2 | $48.00 |
| 7/17/08 | Claim #7 | **$675.14** | 0.2 | $48.00 |

9

"billing judgment," i.e.: must make a good faith effort to eliminate unproductive time or to reduce hours on productive projects where the total amount billed would be unreasonable in relation to the economic value and results of the matter in question. *See In re Albritton*, Case No. 04-48020-MBM (Bankr. E.D. Mich. 2006); *In re Atwell*, 148 B.R. 483 (Bankr. W.D. Ky. 1993). As stated earlier, Applicant was required to examine 13 separate claims filed in this matter. It should be noted that on those occasions where more than 0.2 hours were spent reviewing the claims, Applicant was required to review attached mortgage documents (Claim #14) or there were multiple claims reviewed on that date. The Trustee failed to cite any specific time entry that is excessive and did not question the veracity of the individual time entries claimed. Therefore, the Court denies the Trustee's objection on this item.

### C.

<u>Fees for Fee Application Preparation</u>

| | | | | |
|---|---|---|---|---|
| 9/2/08 | Claim #15 | **$699.68** | 0.2 | $51.00 |
| 7/21/08 | Claim #8 | **$824.62** | 0.2 | $48.00 |
| 7/3/08 | Claim #3 | **$1,334.98** | 0.2 | $48.00 |
| 8/6/08 | Claim #12 | $818.04 | | |
| | Claim #13 | <u>$682.32</u> | | |
| | | **($1,500.36)** | 0.3 | $76.50 |
| 7/15/08 | Claim #5 | $468.87 | | |
| | Claim #6 | <u>$1,311.81</u> | | |
| | | **($1,780.68)** | 0.3 | $72.00 |
| 8/4/08 | Claim #9 | $735.92 | | |
| | Claim #10 | $929.10 | | |
| | Claim #11 | <u>$2,327.88</u> | | |
| | | **($3,992.90)** | 0.4 | $102.00 |
| 9/3/08 | Claim #16 | $322.52 | | |
| | Claim #17 | $803.98 | | |
| | Claim #18 | <u>$2,900.82</u> | | |
| | | **($4,027.32)** | 0.4 | $102.00 |
| 6/24/08 | Claim #2 | **$4,531.01** | 0.2 | $48.00 |
| 8/14/08 | Claim #14 | **$49,007.71** | 0.4 | $102.00 |

Trustee objects to the amount requested for preparation of the fee application. Applicant's fee applicant sought $408.17 for preparation of the fee application, which represents 5% of the total fees sought. Applicant claims that 6.4 hours were actually spent on the preparation of the fee application, which likely would produce an amount substantially in excess of that depending on who performed the services. Time spent generating fee applications is generally limited to 5% of the total fees initially requested. *In re New Boston Coke Corp.* at 446. "Absent exceptional circumstances, fees for the preparation of fee applications should be limited to 5% of the total fees requested." *Id. quoting In re* Bass, 227 B.R. 103, 109 (Bankr. E.D. Mich. 1998). Although the Trustee questioned the veracity of the time entry for preparation of this fee application, she failed to cite any reason for claiming that the amount is unreasonable. Therefore, the Court denies the Trustee's objection.

**IV.**

For the reasons stated above, the Court awards attorney fees in the amount of $4,722.67 and costs in the amount of $787.84, less $2,050.00 for retainer on hand, for a total award of $3,460.51.[2]  Applicant should prepare an appropriate order.

.

**Signed on March 27, 2009**

                              /s/ Walter Shapero
                         **Walter Shapero**
                         **United States Bankruptcy Judge**

---

[2] The following calculations were used to come to this result.

FEES:

$6,552.67 (fees requested) - $2,455.00 (state court fees) = $4,097.67 (bankruptcy fees)
The state court fees allowed total $625.00 (those incurred in setting aside the default judgment)

$4,097.67 (bankruptcy fees) + $625.00 (allowed state court fees) = **$4,722.67** (total fees allowed)

EXPENSES:

$1,610.74 (expenses requested) - $1,427.74 (state court expenses) = $183.00 (bankruptcy expenses)
The state court expenses allowed total $604.84 (those incurred in setting aside the default judgment)

$183.00 (bankruptcy expenses) + $604.84 (allowed state court expenses) = **$787.84** (total expenses allowed)

FEES + EXPENSES ALLOWED:

$4,722.67 (total fees allowed) + $787.84 (total expenses allowed) = **$5,510.51** (total award)

$5,510.51 (total award) - $2,050 (retainer on hand) = **$3,460.51**

12